UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> NEWREZ LLC D/B/A/ SHELLPOINT ) <br> MORTGAGE SERVICING, ) <br> ) <br> Defendant. ) | Case No.: 2:22-cv-00626-GMN-EJY <br><br> **ORDER** |

Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 14), filed by Plaintiff SFR Investments Pool 1, LLC ("SFR"). Defendant Newrez LLC d/b/a/ Shellpoint Mortgage Servicing ("Shellpoint") filed a Response, (ECF No. 17), and SFR filed a Reply, (ECF No. 20).

For the reasons discussed below, the Court **GRANTS** SFR's Motion for Preliminary Injunction.

**I.    BACKGROUND**

This case arises out of an impending judicial foreclosure sale of real property located at 6451 Hamilton Grove Avenue, Las Vegas, Nevada 89122 ("the Property"), currently scheduled for July 22, 2022. (*See* Compl. ¶ 5, ECF No. 1); (Mot. Prelim, Inj. 2:7, ECF No. 14). On January 19, 2006, the borrower obtained a loan from Republic Mortgage LLC in the amount of $255,240.00, secured by a Deed of Trust ("DOT") identifying Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (DOT, Ex. B. to Resp., ECF No. 17-2). The DOT was recorded on January 25, 2006. (*Id.*). On September 16, 2021, Shellpoint became the DOT's beneficiary. (*See* 2022 Notice of Breach and Default, Ex. Q to Resp., ECF No. 17-17).

On July 29, 2008, upon the borrower's failure to stay current on his loan obligations, Recontrust Company, acting as agent for the beneficiary, recorded a Notice of Default and Election to Sell under Deed of Trust, declaring "all sums secured [by the DOT] immediately due and payable." (*See* 2008 Notice of Default, Ex. M to Resp., ECF No. 17-13). On January 11, 2022, Quality Loan Service Corporation ("QLS") recorded a Notice of Rescission of Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust, which stated:

> Whereas, the present beneficiary under that certain Deed of Trust above described, instructed the present trustee to exercise the power of sale with respect to the property: Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described: and Whereas, a Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust was recorded on 7/29/2008 in the office of the Recorder of **CLARK** County, Nevada. Instrument number 20080729-0003742. in Book xxx. Page xxx. of Official Records.
>
> **NOW: THEREFORE, NOTICE IS HEREBY GIVEN that the present beneficiary and/or the present trustee, does hereby rescind, cancel and withdraw said Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust, and does further hereby rescind, cancel, withdraw and revoke any acceleration of the loan.**

(2022 Notice of Rescission, Ex. 4 to Mot. Prelim. Inj., ECF No. 14-4).

On October 19, 2012, SFR purchased the Property for $8,205.00 at an HOA foreclosure sale. (Foreclosure Deed, Ex. D to Resp., ECF No. 17-4). On June 3, 2014, QLS, acting as trustee under the DOT, recorded a second Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust, declaring "all sums secured [by the DOT] immediately due and payable." (2014 Notice of Breach and Default, Ex. N. to Resp. ECF No. 17-14). However, on May 30, 2018, QLS recorded a Notice of Rescission of Notice of Default, which stated:

Notice was recorded on **6/3/2014** in the office of the Recorder of **CLARK** County, Nevada, Instrument number **20140603-0002625,** in Book , Page , of Official Records.

NOW; THEREFORE, NOTICE IS HEREBY GIVEN that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

(2018 Notice of Rescission, Ex. O to Resp., ECF No. 17-15).

On January 11, 2022, QLS, acting as trustee under the DOT, recorded a third Notice of Breach and Default and of Election to Cause Sale of Real Property under Deed of Trust, declaring "all sums secured [by the DOT] immediately due and payable." (2022 Notice of Breach and Default, Ex. Q to Resp.). A foreclosure sale pursuant to the 2022 Notice of Default is currently scheduled for July 22, 2022.

SFR initiated this case on April 14, 2022, claiming that Shellpoint's DOT was terminated in 2018 pursuant to NRS 106.240, Nevada's ancient mortgage statute, and thus, Shellpoint cannot foreclose on the Property. (*See generally* Compl., ECF No. 1). The Complaint alleges two causes of action: (1) Quiet Title under NRS 40.010; and (2) Violation of NRS 107.200. (*Id.* ¶¶ 21–57). SFR also filed the present Motion for Preliminary Injunction, which asks the Court to cancel the July 22, 2022, foreclosure sale. (Mot. Prelim. Inj. 4:8–10).

## II. LEGAL STANDARD

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 20. "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (internal quotation marks omitted).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

SFR's Motion arises from NRS 106.240, Nevada's ancient mortgage statute, which creates a "conclusive presumption that a lien on a real property is extinguished" ten years after the debt becomes "wholly due." *Pro-Max Corp. v. Feenstra*, 117 Nev. 90, 16 P.3d 1074, 1077 (Nev. 2001); (Mot. Prelim. Inj. 4:11–17). SFR argues that the debt secured by Shellpoint's DOT was satisfied and discharged under NRS 106.240 in 2018 because ten years had elapsed since Recontrust Company recorded the 2008 Notice of Default. (Mot. Prelim. Inj. 7:6–8:2). Shellpoint counters that NRS 106.240 could not have terminated the DOT because QLS eventually rescinded the 2008 Notice of Default. (Resp. 6:1–9:7, ECF No. 17). Additionally,

1  Shellpoint argues that, even if the 2008 Notice of Default had not been rescinded, SFR's claims
2  still fail because of: (1) claim preclusion; and (2) equitable tolling. (*Id.* 9:8–11:2).
3        NRS 106.240, provides:
4        The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall
5        at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly
6        due, terminate, and it shall be conclusively presumed that the debt has been regularly
7        satisfied and the lien discharged.
8  Though the Nevada Supreme Court has not directly addressed which specific documents trigger
9  NRS 106.240, it routinely finds that recorded notices of default accelerating a homeowner's
10  loan balance "arguably mak[e] the loan 'wholly due' for purposes of NRS 106.240." *See, e.g.*,
11  *SFR Investments Pool 1, LLC v. U.S. Bank., N.A.*, 507 P.3d 194, 195 (Nev. 2022).  Other courts
12  in this district generally agree, finding that a recorded notice of default triggers acceleration
13  under the statute. *See Daisy Trust v. Fannie Mae*, No. 2:20-cv-01217-GMN-EJY, 2021 WL
14  1226536, at *4 (D. Nev. Mar. 21, 2021) (collecting cases).  Here, SFR produces evidence that
15  the 2008 Notice of Default accelerated the mortgage on the Property by declaring "all sums
16  secured [by the DOT] immediately due and payable," thereby making the loan "wholly due"
17  and triggering NRS 106.240's ten-year timeline. (*See* 2008 Notice of Default, Ex. M to Resp.).
18  Because neither Shellpoint, nor its predecessors, foreclosed on the Property by July 29, 2018,
19  SFR claims that Shellpoint's DOT has been extinguished.
20        However, the Nevada Supreme Court has found that a rescission of a notice of default
21  and election to sell, recorded before the ten-year period's expiration, "effectively cancel[s] the
22  acceleration," such that "NRS 106.240's ten-year period is reset." *SFR Investments Pool 1, LLC*
23  *v. U.S. Bank., N.A.*, 507 P.3d 194, 196 (Nev. 2022) (quoting *Glass v. Select Portfolio Servicing,*
24  *Inc.*, 466 P.3d 939, 2020 WL 3604042, at *1 (Nev. 2020)).  In the present case, Shellpoint
25  proffers the 2022 Notice of Rescission (rescinding the 2008 Notice of Default) and the 2018

Notice of Rescission (rescinding the 2014 Notice of Default), but neither succeeds in canceling the acceleration effectuated by the 2008 Notice of Default. First, the 2022 Notice of Rescission was recorded more than ten years after the 2008 Notice of Default, and thus, was not recorded in time to avoid NRS 106.240's presumed DOT extinguishment. (2022 Notice of Rescission, Ex. 4 to Mot. Prelim. Inj.). Second, the 2018 Notice of Rescission only rescinds the 2014 Notice of Default and makes no mention of the 2008 Notice of Default. (2018 Notice of Rescission, Ex. O to Resp.). In fact, the 2018 Notice of Rescission states: "this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust" and repeatedly confirms that the rescission affects the 2014 Notice of Default. (*See id.*) ("the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw *said* Declaration of Default and Demand for Sale") (emphasis added).

Shellpoint claims that "the fact that the 2018 rescission notice only references a notice of default recorded on June 3, 2014, is of no moment here," and argues that the 2018 Notice of Rescission also effectively rescinded the 2008 Notice of Default. (Resp. 8:13–20). However, Shellpoint provides no authority to support the proposition that a recorded notice of rescission rescinds not only the notice of default that it identifies, but also a prior unidentified notice of default. As such, at this time, the Court is not persuaded that the 2014 Notice of Rescission also applied to the 2008 Notice of Default. Accordingly, SFR has demonstrated a likelihood of success on the merits of its NRS 106.240 claim because the 2008 Notice of Default made the debt "wholly due," 10 years have passed since it was recorded, and it was not timely rescinded.

As noted above, Shellpoint also argues that SFR's NRS 106.240 claim is barred by claim preclusion and equitable tolling, however, neither theory has merit. (Resp. 9:8–11:2). Shellpoint argues that claim preclusion bars SFR's NRS 106.240 arguments because the Property was previously involved in another piece of litigation in this district: *Ditech Financial, LLC et al. v. SFR Investments Pool 1, LLC*, No. 2:15-cv-02381-GMN-VCF. (*Id.* 9:9–13). In

*Ditech Financial*, the Federal Housing Finance Agency ("FHFA") sought declaratory relief to quiet title that the federally controlled DOTs encumbering 89 different SFR-owned properties, including the Property at stake here, were not extinguished by HOA foreclosure sales. (*See generally* Am. Compl., ECF No. 24 in Case No. 2:15-cv-02381-GMN-VCF). The Court found that 12 U.S.C. § 4617(j)(3) (the "Federal Foreclosure Bar") prevented HOA foreclosure sales under NRS § 116 from extinguishing the federally controlled DOTs. (*See* Order 7:12–9:18, ECF No. 127 in Case No. 2:15-cv-02381-GMN-VCF). Shellpoint claims that "SFR's NRS 106.240 arguments are barred by claim preclusion because they could have raised them in the prior quiet title action." (Resp. 9:9–13).

Claim preclusion under the doctrine of *res judicata* applies when "a final judgment on the merits bars further claims by the same parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979); *accord Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). To establish claim preclusion, Shellpoint must show that there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) an identity or privity between the parties. *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016). However, besides conclusively stating that claim preclusion applies, Shellpoint makes no effort to discuss the claim preclusion standard or explain how the parties in *Ditech Financial* are identical to the parties in this case; Shellpoint was not a party in *Ditech Financial*, and there are no federal government parties in this case. Further, while both *Ditech Financial* and this case involve claims for quiet title, *Ditech Financial* specifically addressed the Federal Foreclosure Bar's effect on HOA foreclosures under NRS § 116, which is not an issue here. Therefore, Shellpoint has not met its burden to show that the "same parties" or the "same cause of action" are implicated in both cases. *See Garity*, 828 F.3d at 855 ("The party asserting a claim preclusion

argument must carry the burden of establishing all necessary elements."). The Court declines to find claim preclusion with respect to SFR's NRS 106.240 arguments.

Finally, Shellpoint argues that *Ditech Financial*'s long-running title litigation from 2015–2020 tolled NRS 106.240's ten-year time limit. (Resp. 9:16–11:2). To support this argument, Shellpoint cites *Pro-Max Corp. v. Feenstra*, 117 Nev. 90 (2001). In *Feenstra*, the Nevada Supreme Court found that NRS 106.240 extinguished promissory notes recorded against real property, but remanded to the case for the district court to consider whether NRS 106.240 should be estopped as a defense because the debtors had allegedly represented that the notes would still be paid in lieu of NRS 106.240. 117 Nev. at 95–96. While *Feenstra* demonstrates that Nevada state law permits equitable estoppel to be used as a defense to NRS 106.240 when the debtors have made alternative agreements to pay, it does not support Shellpoint's argument that NRS 106.240 should automatically be tolled because the Property was involved in litigation at some point during the ten-year period. Further, Shellpoint neglects to explain why the mere existence of the *Ditech Financial* litigation, specifically, necessitates the fashioning of an equitable remedy to toll NRS 106.240's ten-year timeline, especially when considering that *Ditech Financial* did not stop QLS from recording the 2018 Notice of Rescission.[1] Accordingly, the Court finds no reason to toll NRS 106.240's ten-year timeline based on *Ditech Financial*.

//

//

---

[1] Shellpoint also notes that the purpose of NRS 106.240 is to "clear abandoned or forgotten liens from the record," and argues that that purpose would not be served in this case because "the lien was obviously not abandoned or forgotten" because it was part of *Ditech Financial*. (Resp. 9:16–22, ECF No. 17). To the contrary, that seems to be precisely what happened. While the Property was involved in the *Ditech Financial* litigation from 2015 to 2020, it was merely one of 89 such properties. Further, throughout the *Ditech Financial* litigation, documents were still being recorded in relation to the Property, most notably the 2018 Notice of Rescission that rescinded the 2014 Notice of Default. Presumably, the 2008 Notice of Default could have also been rescinded at that time if Shellpoint's predecessors had remembered to do so. Instead, Shellpoint waited until 2022 to rescind the 2008 Notice of Default, seemingly when Shellpoint discovered it still existed.

### B. Irreparable Harm

To carry its burden, SFR must also establish that it will likely suffer irreparable harm without the issuance of injunctive relief. *Winter*, 555 U.S. at 21. SFR must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Id.* At bottom, Plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to compensate for th[e] injury." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).

Here, without the requested injunction, Shellpoint will likely sell the property on July 22, 2022. However, as discussed above, SFR has shown a likelihood of success on the merits of its claim that Shellpoint's interest was extinguished in 2018. Allowing the sale to proceed when Shellpoint may not even hold a valid interest in the Property would cause irreparable harm to SFR. *See SFR Investments Pool 1, LLC v. United States Bank National Association*, No. 3:20-cv-00604-LRH-WGC, 2020 WL 6685528, at *2 (D. Nev. Nov. 10, 2020) ("Permitting the sale to go forward when it is not clear that U.S. Bank holds any interest in the property to sell may cause irreparable harm to SFR.").

### C. Balance of the Equities

The balance of equities tips sharply in favor of SFR because, without this injunction, Shellpoint may sell the property and extinguish SFR's interest before the Court resolves the merits of the declaratory judgment claim.

### D. Public Interest

"The public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted). In this case, Shellpoint claims that enjoining a valid property interest does not serve the public interest. (Resp. 18:9–17). However, as discussed above, SFR

has demonstrated a likelihood of success on the merits that Shellpoint's interest has actually been extinguished.  As such, the Court finds no public interest that would be injured by the issuance of such injunctive relief.

### E. Bond

A preliminary injunction must be accompanied by payment of a bond "in such a sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). "So long as a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (citing *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975)).

SFR argues that the Court should not enter a bond greater than $3,000.00. (Reply, ECF 9:4–11, No. 20).  Shellpoint argues that SFR's bond should be "commensurate with the property's value, the original loan amount, or the loan balance." (Resp. 20:10–11).  However, should the Court find that Shellpoint's DOT has not been extinguished, and was therefore wrongfully enjoined, Shellpoint will then be free to conduct a foreclosure sale on the Property to satisfy the loan obligations.  Accordingly, the Court will impose a bond of $3,000.00.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that SFR's Motion for Preliminary Injunction, (ECF No. 14), is **GRANTED**.  Shellpoint, and its successor, assigns, and agents, are enjoined from continuing foreclosure proceedings on the Property during the pendency of this case.

**IT IS FURTHER ORDERED** that this preliminary injunction will go into effect upon SFR's posting a bond in the amount of $3,000.00.

**DATED** this __15__ day of July, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court